**16-CV-60487-COHN/WHITE**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

BRANDON ROBINSON,                          : Case No. 13-60284-CR-COHN

                    Petitioner.            :

                                           :

                                           :

VS.                                        :

                                           :

                                           :

UNITED STATES OF AMERICA,                  :

                    Respondent.            :

                                           :

_____

FILED by _____ D.C.

MAR 1 0 2016

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. of FLA. — MIAMI

cat / div 510 2255 Ft Lauderdale
Case # 13cr60284
Judge Cohn   Mag White
Motn Ifp no   Fee pd $ 0
Receipt # _____

MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U-.S.C. 2255.

_____

   **COMES** the petitioner in the above-entitled action, Brandon Rob-inson, and moves this court to grant the releif requested (re-se-ntenced without sentencing enhancements, plea vacated/or any oth-er remedy this court sees "fit" to neutralize the taint of the Constitutional Violation of petitioner's **Sixth Amendment**), for the reasons set forth in the attached memorandum of law:

   WHEREFORE, petitioner Brandon Robinson moves this court to libe-rally construe his filing pursuant to the Supreme Court's ruling in **HAINES V. KERNER**, supra, "(W)here a pro-se litigant is held to a lesser standard than professinal lawyers."

DATE: February, (2) 2016

                                        Brandon Robinson, pro-

                                        se

A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

BRANDON ROBINSON,                    :Case No. 13-60284-CR-COHN

               Petitioner.   :

                            :

VS.                                  :

                            :

UNITED STATES OF AMERICA,            :

               Respondent.   :

_____       :

MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S MOTION TO VACATE, SE
-T ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. 2255.

_____

   **COMES NOW**, the petitioner, Brandon Robinson, pro-se, in the ab
-ove styled and captioned cause and respectfully submits this   –
memorandum of law in support of his motion to vacate, set aside,
and or correct sentence for the following reasons:
COunsel was ineffective at the plea bargaining stage – SEE GROUND
(S), 1, 2, 4, 5 and sentencing staged –SEE GROUND 3.


DATE February, (2⸺) 2016                    *Brandon Robinson*

                                Brandon Robinson, pro-se

B

## ANALYSIS

The Sixth Amendment in part provides, in all criminal prosecut-ions, the accused shall enjoy the right to have the assistance o-f counsel for his defense. The Sixth Amendment right to defense-counsel in felony prosecutions is a fundamental right on the Stat-es through the Fourteenth Amendment as well. SEE STRICKLAND V. W-ASHINGTON, 466 U.S. 688, 80 L.Ed. 2d. 674, 104 S.Ct. 2052(1984) and GIDEON V. WAINWRIGHT, 372 U.S. 335 83 S.Ct. 792, 9 L.Ed. 2d 7-99 (1963).

The STRICKLAND test has two components, both of which must be s-atisfied to establish that defense counsel's performance was ine-ffective. Id. at 687. This requires showing that counsel's error's were so serious that counsel was not functioning as the counse-l guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defendant. Id. at 693.

To make this showing, the defendant must demonstrate that counse-l's errors fell below an objective standard of reasonableness an-d that counsel's ineffectiveness prejudiced his defense so as to deprive him of his right to a fair trial. Id. at 679. The Court m-ust determine whether, in light of all circumstances whether the identified acts or omissions were outside the wide range of profe-ssional assistance. Id. 690.

In evaluating claims of this sort the court must consider--
**HILL V. LOCKHART,** 474 U.S. 52, 106 S.Ct. 1441, 25 L.Ed. 203 where
the Supreme Court held that "the two part STRICKLAND test applies
to challenged to guilty pleas based on ineffective assistance of
-counsel" Id. at 690. Hill concerned whether there was ineffectiv
-e assistance leading to acceptance of plea offer.

STRICKLAND in conjunction with HILL standard(s) govern the peti
-tioner's claim.

D

## JURISDICTION OF THE COURT

This court is vested with jurisdiction over the matters herein , by virtue of 28 U.S.C. 2255. The court having sentenced Robinso -n may review the sentence it imposed and correct the denial of a Constitutional Right violated by the imposition of the sentence i -tself.

Petitioner Robinson, seeking 2255 releif, has to suatain his co -ntentions by only a preponderance of the evidence, and presentin -g the instant motion Robinson has so done. WRIGHT V. UNITED STAT -E$, 624 F.2d 577 (5th Cir. 1980).

Pursuant to Title 28 U.S.C. 2255 "(a) prisoner in custody unders -entence of a court established by Act of Congress claiming the r -ight to be released upon the ground that the sentence was impose -d in violation of the Constitution or Laws of the United States, or that the court was without jurisdiction to impose such a sente -nce or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move th -e court which imposed the sentence to vacate, set aside or corre -ct said sentence.

Because collateral review is not a substitute for direct appeal the grounds for collateral attack on final judgements pursuant to 28 U.S.C. 2255 are extremely limited. A petitioner is entitled to releif under 2255 are extremely limited. A petitioner is entitled to releif under 2255 if the court imposed a sentence that (1) vio -lated the Constitution or laws of the United States, (2) exceede -d its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack, SEE U.S.C. 2255

E

## GROUND 1

COUNSEL IS INEFFECTIVE IN FAILING TO OBJECT  TO PETITIONER BEING SENTENCED TO SUBSTANTIVE CRIMES OF THE CONSPIRACY. HERE THE SUBST -ANTIVE CRIME OF THE CONSPIRACY WAS ONE OF THE GOALS OF THE CONSP -IARACY AND THE SUBSTANTIVE CRIME FACILITATED THE IMPLEMENTATION OF THE GOAL OF THE CONSPIRACY. SIMPY PUT, PETITIONER WAS SENTENCE -D PURSUANT TO THE **PINKERTON** THEORY OF CULPABILITY. PETITIONER WA -S  NOT DISPOSED TO THIS THEORY, COUNSEL ALLOWED THE PETITIONER T -O PLEA WITHOUT HAVING THE COURT MAKING THE FINDING PURSUANT TO PINKERTON. BECAUSE COUNSEL FAILED TO DO SO PETITIONER'S SIXTH AME _=NDMENT WAS VIOLATED.

Counsel's performance falls below the STRICKLAND objective sta -ndard of reasonableness if counsel's specifc acts or omissions a -re not demonstrable the result of actual strategic choices made between or among all plausible options after thorough investigati -on of law and facts relevant to the option. STRICKLAND, 466 U.S. at 691; KIMMELMAN V. MORRISON, 477 U.S. at 385-387, WILLIAMS V. T -AYLOR, 120 S.Ct. 1495, 1512-16, 146 L.Ed.2d 389 (2000).

Where a convicted defendant is making a claim of ineffective as -sistance of counsel, the defendant:"...must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgement," STRICKLAND V. WASHINGTON, U.S.at 690.

1

The commission of a substantive offense and a conspiracy to co-mmit it are seperate and distinct offenses. U.S. V. GORNTO, 792 F.2d 1028 (11th Cir. 1986). However, each party to a continuing conspiracy may be vicariously liable for substantive offenses com-mitted by a co-conspirator during the course and in furtherance of the conspiracy, notwithstanding the party's non-participation in the offense or lack of knowledge thereof. PINKERTON V. U.S., 3-28 U.S. 640 (1946).

Liability will not lie, however, if the substantive crime did n-ot fall within the scope of the unlawful project or was merely a part of the ramifications of the plan which could not reasonably-foreseen as a necessary or natural consequence of the unlawful agreement. Id. If the jury is **not** instructed on a PINKERTON theor-y of culpability, a conviction cannot be sustained on this theor-y. U.S. V. GONZALEZ, 940 F.2d 1413 (11th Cir. 1991).

## "ULTIMATE GOAL"

The object of the conspiracy here was to recruit, entice, harbo-r, transport, provide, obtain, maintain, benefit from an individ-ual under the age of 18 engaged in commercial sex acts.

## "SUBSTANTIVE COUNT"

The substantive count of the conspiracy was - the defendant rec-ruited, enticed, harbored, transported, provided, obtained, or -maintained by any means a person under the age of 18 or benefitte-d from.

2

## ARGUMENT

Petitioner asserts that in his plea agreement he plead only to sex trafficking with respect to Z.G. and M.Y. Petitioner due to c -ounsel's ill-advice plead guilty to the conspiracy as well and w -as thus accountable for all **four victims.** Petitioner asserts tha -t  he was held accountable for substantive offense of the con- spireacy . Petitioner asserts that this type of finding can only be found if the facts are presented to the jury. Here there was- no evidence to show that petitioner had committed the substantive offense with respect to L.J.  and T.C...

In PINKERTON V. UNITED STATES (US) supra, a conspiracy and subs -tantive  offenses were charged. Pinkerton decided that a conspir -ator can be held guilty of the substantive offense even though h -e did no more than join the conspiracy, provided that the substa -ntive offense was committed in furtherance of the conspiracy and as a part of it. A verdict on that theory requires submission of **those fact issues to the jury.**

In PINKERTON, brothers, Daniel and Walter Pinkerton were charged with both substantive violations of the Internal Revenue Code and conspiracy to violate those provisions. There was no evidence to show that Daniel had committed the substantive offense. Neverthel -ess, his conviction on those offenses was upheld because there w -as ample proof that Walter, his coconspirator, had committed tho -se offenses during and in furtherance of the unlawful conspiracy -.  The Court explained that "so long as the partnership in crime continues, the partnes act for each other in carrying it forward. -" The Court further explained that a verdict on this theory requ -ires submission of those fact issues to the jury.

3

Petitioner rethorts that here he was convicted on substantive off
-enses in which there was no evidence shown  nor produced to sub-
stantiate such a conviction. Petitioner asserts that in ALLEYNE t
-he Supreme Court decided that such a conviction is a violation o
-f the Sixth Amendment.

The Supreme Court's recent decision in  ALLEYNE V. UNITED STAT
-ES, supra, 133 S.Ct. 2151 (2013), is instructive in the Case at
bar.

In ALLEYNE, the Supreme Court overruled HARRIS V. UNITED STATE
_S , 536 U.S. 545 (2002), and held that any facy that increases t
-he mandatory minimum sentence for a crime is an ELEMENT of the c
-rime rather than a sentencing factor and, as such, that element
must be found by a jury beyond a reasonable doubt. ALLEYNE, 133 S
Ct. 2155.

The Sixth Amendment provides that those "accused" of a  "crime"
have the right to trial "by an impartial jury". This right, in co
-njunctin with the Due Process Clause, requires that each element
of a crime be proved to the jury beyond a reasonable doubt. U.S.
V.  GAUDIN, 515 U.S. 506, 510 (1995); InREWINSHIP, 397 U.S. 358,
364 (1970). The substance and scope of this right depend upon the
proper designation of the **facts that are elements** of the crime.

4

The question of how to define a "crime"-and, thus, how to dete -rmine what facts must be submitted to the jury--has generated a number of divided opinions from this Court. The principal source of disagreement is the constitutional status of a special sort of fact known as a "sentencing factor". This term was first used in MCMILLAN V. PENNSYLAVANIA, 477 U.S. 79, 86 (1986),to refer to fac -ts that are not found by a jury but that can still increase the defendant's punishment. Following MCMILLAN'S introduction of this term, this Court has made a number of effoets to delimit its boun -daries.

McMILLAN initially invoked the distinction between "elements" a -nd "sentencing factors" to reject a constitutional challenge to Pennsylvania's Mandatory Minimum Sentencing Act, 42 Pa. Cons. Stat. 9712 (1982). That law provided that anyone convicted of cer -tain felonies would be subject to a mandatory minimum sentence i -f the judge found, by a preponderance of evidence, that the pers -on "visibly possessed a firearm" in the course of committing spe -cified crimes. 477 U.S. at 81, n.1. While the Court acknowledged that there were constitutional limits to the States's abilility t -o "define crimes and prescribe penalties," it founs that the Com -monwealth had permissibly defined visible possession as a sentec -ing factor, rather than an element. Id. at 86. In the Court's vi -ew , this allowed the judge, rather than the jury, to find this fact by a preponderance of evidence without violating the Consti -tution.

McMillan did not address whether legislature's freedom to define facts as sentencing factors extended that increased the maximum term of imprisonment for an offense. We foreshafowed an answer to this question in JONES V. UNITED SATES, 526 U.S. 227, 243, n.6 (1 -199), but did not resolve the issue until APPRENDI. There, we id -entified  a concrete limit on the types of facts that legislatur -es may desognate as sentencing factors.

In Apprendi, the defendant was sentenced to 12 years imprison- ment under a New Jersey statute that increased the maximum term o -f imprisonmant from 10 years to 20 years if the trial judge foun -d that the defendant committed his crime with racial bias. 530 U.S. at 470. In defending its sentencing scheme, the State of New Jersey agreed that, under MCMILLAN, the legislature could define racial bias as a sentencing factor to be found by the judge. We declined to extend MCMILLAN that far. We explained that there was no "principled basis for treating" a fact increasing the maximum term of imprisonment differently than the facts constituting the base offense. 530 U.S. at 476. The historic link between crime an -d  punsihment, instead, led us to oconclude that any fact that - increased the prescribed stat. max. sentence must be an "element" of the offense to be found by the jury. Id. at 483, n.10, 490. We , thus, found that Apprendi's sentence had been unconstitutionall -y enhanced by the judge's findings of racial bias by a preponder -ance of evidence.

While Apprendi only concerned a judicial finding that increased the statutory maximum, the logic of Apprendi prompted questions about the continuing vitality, if not validity, of McMillan's hol -ding that facts found to increase the mandatory minimum sentence are sentencing factors and not elements of the crime. We responde -d two years later in HARRIS V. UNITED STATES, 536 U.S. 545, wher -e we considered the same statutory provision and the same questi -on before us today.

In Harris, the defendant was charged, under 924(c)(1)(a), with- carrying a firearm in the course of committing a drug trafficking crime. The mandatory minimum sentence based on the jury's verdict alone was five years, but the District Court imposed a 7 year - mandatory min. sentence based on its finding, by a preponderance of the evidence, that the defendant also brandished the firearm. As in this case, Harris challenged his sentence on the ground7 that the year man. min. sentence was unconstitutional under Appre -ndi, even though the judge's finding did not alter the maximum sentence to which he was exposed. Harris, supra, at 551.

The Court declines to apply Apprendi to fact that increased the man. min. sentence but not the max. sentence. In the Court's view judicial factfinding that increased the man min. did not implicat -e the Sixth Amendment. Because the jury's verdict "authorized th -e judge to the minimum with or without the finding", Ibid., the Court was of the view that the factual basis for increasing the m -in. sentence was not "essential" to the defedant's punishment.Id at 560-61 (plurality opinion). Instead, it merely limited the- judge's "choices within the authorixed range." Id. at 567.

7

From this, the Court drew a dsitinction between "facts increas-ing the defendant's minimum sentence and fcats extending the sen-tence beyond the stat. max," Id. at 566. The Court limited Appre-ndi's holding to instances where the factual finding increases t-he statutory maximum sentence.

ALLEYNE contends that HARRIS was wrongly decided and that it cannot  be reconciled with our reasoning in APPRENDI.

The touchstone for determining whether a fact must be found by a jury beyond a reasonable doubt is whether the fact constitutes an element or ingredient of the charged offesne. see U.S. V. OBRI-EN, 560 U.S. 218, (2010).

In the Case at bar, petitioner was convicted of substantive off-enses (L.J. and T.C.); because  the district courtssentenced him in  excess of his min. 10 year sentence without a jury's finding the petitioner's sentence must be vacated in accordance with  ALLEYNE.

## CONCLUSION

In closing petitioner asserts that his charges carried a min. mandatory sentence of 10 years. ALLEYNE makes clear that a crimi-nal defendant may not be punished for offense conduct that has-not been formally charged against him and proved beyond a reason-able doubt, regardless of whether "the defendant could have rece-ived  the same sentence with or without that fact. Thus, ALLEYNE "forbids criminal punishment for certain primary conduct."(i.e., legally preseribed facts not afforded 5th and 6th protection.)

Petitioner's offense level was a result of the substantive offe
-nese petitioner was convicted of without any evidence. With resp
-ect  to petitioner's enhancement pursuant to 2G1.3(b)(2)(B) Pet-
itioner was ehanced two points due to T.C.and L.J. being minors.

It is unreasonable that petitioner's counsel would allow petiti
-oner's Sixth amendment to be violated in allowing the sentencing
court to make factual determintaions concerning petitioner's sent
-ence. Petitioner further asserts that he recieved a multiple cou
-nt enhancement due to the additional victims of T.C. and L.J.


Petitioner asserts that pursuant to STRICKLAND his counsel's
performance was "deficient". Petitioner seeks this court to vacat
-e his sentence in light of the violation(s) of his Sixth amendme
-nt, at the minimum an evidentiary hearing is sought in light of
STRICKLAND.

ARGUMENT

In this instant case there was no plea agreement. Petitioner h
-ere avers that the interstate nature/nexus of his elements was n
-ot proved. Petitioner avers that he did not set up backpage ads
to "recruit clients". Petitioner further avers that hotel "use"
was not sufficient to satisfy Congress' Commerce Clause. Finally
petitioner avers that cell phone "usage" in this instant case was
not proved to violate Commerce Clause.

ARGUMENT cont.

Petitioner avers that the facts of the case did not satisfy the elemen
-ts of U.S.C. 1591. Counsel ushered petitioner into stating that
the facts in the factual proffer were correct and provided a sufficien
-t factual basis for all three counts to which he was pleading guilty,
for the sake of "strategy", solely. Petitioner avers that Federal
302 forms show that he did not own a computer and did not post backpag
-e ads. Petitioner asserts that counsel choose not to investigate
these facets because of "future utility";counsel informed petitioner
that because he did not have "knowledge" of the (aforementioned)
he would win on appeal.
Petitioner avers that counsel did not explain the nature of the charg-
es, petitioner avers that had he done so he would not have signed
factual proffer and would have proceeded to trial.


   Under Fed. R. Crim. Proc. 11, a district court, when conducting
a plea colloquy, must "conduct an inquiry into whether the defendant
makes a knowing and voluntary guilty plea." US V. HERNANDEZ-FRAIRE,
208 F.3d 945, 949 (11th Cir. 2000). In accepting a defendant's guilty
plea, the district court must specifically address the three core
concerns of R.11 by "ensuring that a defendant (1) enters his gilty
plea free from coercion (2) understands the nature of the charges,
and (3) understands the consequences of his plea." MORIARTY, 429
F.3d at 1019.
   A district court complies with the second core concern, which is
what is at issue in the present case, when the record supports its
finding that the defendant understood both (1) **what he was admitting**
and (2) **that "what he was admitting constituted the crime charged"**.
SEE US V. MOSLEY, 173 F.3d 1318, 1324 (11th Cir. 1999).
   Petitioner avers that he had no idea that what he was admitting
constitted the crime charged. Here it is clear that the district
court nor his counsel explained the elements of the crime charged
nor what he admitted constituted the crime charged.

Petitioner retorts in this instant case the district court nor the district court explained the elements of his charge, nor did the district court/counsel explain that what he was admitting cnstitut -ed the crime charged.

The elements of petitioner's crimes were that: "(1) he knowingly recruited, enticed, harbored, transported, provided, obtained, or maintained a person by any means; (2) he knew, or recklessly disregard -ed the fact, that each victim was a minor and would be caused to engage in a commercial sex act; and (3) his acts were in or affected interstate or foreign commerce.

Petitioner asserts that the aforementioned charges are rather compl -ex and should have been thoroughly explained by counsel and the distr -ict court, specifically prong (3) that his acts were in or affected interstate foreign commerce. Petitioner asserts that counsel nor the district court explained to him that purely local activities could satisfy interstate nexus.

The Eleventh Circit has held that "there is no one mechanical way or precise juncture that a district court is required to inform the defendant of th nature of the charges in the R.11 colloquy. This has instructed that:

> [f]or simple charges... a reading of the indictment, followed by an opportunity given the defendant to ask questions about it, will — usually suffice. Charges of a **more complex nature**, incorporating- esoteric terms or concepts unfamiliar to the lay mind, may require more explication. In the cases of **extremely complexity**, an explanation of the elements of the offense like that given the jury in its instruc -tion may be required.

SEE U.S. DEPACE, 120 F.3d 233, 231 (11th Cir. 1997).

**Concerning** counsel, petitioner avers that counsel informed him that he was basically setting the "pins up", or preparing a winning argumen -t for appeal. At the R.11 colloquy, petitioner disillusioned by counsel's "strategy" stated that the facts in the factual proffer were correct and provided a sufficient factual basis for all three counts to which he was pleading guilty. Consel stated "we" have gone over the elements and we have applied the facts of this case to the

elements of **the crime** stated in the statute.

Petitioner avers that here U.S.C. 1591 is a complex charge, in -corporating esoteric terms or concepts unfamiliar to the lay min -d and required more explication. Specifically petitioner avers t -hat the fact that local activities can have impact on interstate commerce is a a concepts unfamiliar to the lay mind. Petitioner - admitted actions (local activities), that he did not know consti- tuted the crime charged.

**UNFAMILIAR CONCEPT TO THE LAY MIND-**

Pursuant to the authority conveyed by the Commerce Clause of th -e U.S. Constitution, Congress has the power to regulate activit -ies that substantially affect interstate commerce. The U.S. Supr -eme Court has interpreted that power broadly to include the powe -r to regulate purely local activities are part of an economic - class of actions, that have an substantial effect on interstate commerce. Where Congress has attempted to regulate or eliminate an interstate market, the RAICH decision grants Congress substant -ial leeway to regulate purely intrastate activity, whether econo -mic or not, that it deems to have the capability in the aggregat -e , of frustrating the broader regulation of interstate economic activity.

Petitioner asserts that this court has been clear that purely - intrastate conduct, such as using hotels that serve interstate tr -avelers or using cellular telephones, is enough to satisfy the - interstate requirement of 18 U.S.C. 1591(a)(1). The fact that the court has been clear about the aforementioned is all the more rea -son for the court and counsel to ensure that petitioner knew wha -t he was admitting constituted the crime charged. Petitioner **did not** understand that the use of a hotel room-

### GROUND 2&4, INEXTRCABLY INTERTWINED

COUNSEL IS INEFFECTIVE IN FAILING TO ENSURE THAT PETITIONER UNDER
-STOOD THE NATURE AND THE ELEMENTS OF THE CHARGES AGAINST HIM.COU
-NSEL INFORMED PETITIONER CONCERNING THE INTERSTATE NEXUS OF THE
CHARGE THAT, "WE'LL WIN ON APPEAL BECAUSE THE GOVERNMENT DID NOT
PROVE KNOWLEDGE". (KNOWLEDGE) IS THE ONLY ELEMENT OF THE CHARGE
THAT COUNSEL EXPLAINED TO PETITIONER. WHEN PETITIONER INQUIRED
ABOUT THE REST OF THE ELEMENTS (1591a), COUNSEL INFORMED PETITION
-ER, "I'M SETTING (THEM) UP FOR APPEAL, ALL WE NEED TO FOCUS ON I
-S THE KNOWLEDGE ELEMENT AND THE FACT THAT THE GOVERNMENT DID NOT
PROVE IT." COUNSEL'S DEFICIENCY VIOLATED PETITIONER'S SIXTH AMEND
_MENT. COUNSEL'S ADVICE AT PLEA NEGOTIATIONS WAS INEFFECTIVE UNDE
=R STRICKLAND.


**STRICKLAND APPLIES TO THE PLEA PROCESS-**

HILL V. LOCKHART, 474 U.S.52, 88 L.Ed.2d 203, 106 S.Ct. 311(1985)

　　Although our decision in STRICKLAND ...dealt with a claim of-

ineffective assistance of counsel in a capital sentencing proceed

-ing and was premised in part on the similarity between such a pr

-oceeding and the usual criminal trial, the same two-part stan-

dard seems to us applicable to ineffective-assistance claims aris

-ing out of the plea process.

　　We hold therefore, that the two-part STRICKLAND...test applies

to challenges to guilty pleas in (IAC). In the context of guilty

pleas, the first half of the STRICKLAND...test is nothing more th

-an a restatement of the standard of attorney competence already

set forth in TOLLET V. HENDERSON. The second, or "prejudice," -

requirement,on the other hand, focuses on whether counsel's const

-itutinally,ineffective performance affected the outcome ofthe pl

~~-ea process. In other words, in order to satisfy the "prejudice"~~

requirement, the defendant must show that there is a reasonable -

probability that but for counsel's errors, he would not have plea

-ded guilty and would have insisted on going to trial.

or using cellular telephones is enough to satisfy the requirement
-. Petitioner avers that his statement of facts did not inhere th
-ese elements and the government did not prove that the cellular
phone allegedly used in this case was manufactured out of state.
SEE EVANS, 476 F.3d at 1179; US V. DANIEL, 685F.3d 1237, 146 (11t
-h Cir. 2012). Petitioner contends that these elements were not-
satisfied and had counsel not urged him to state that the factua-
l proffer provided sufficient basis for his plea the facts of the
case would not meet the elements of the crime. Petitioner also -
contends that he entered the factual proffer because he did not-
understand the nature/elements of the charged offense.

   Petitioner's "ignorance" paired with counsel's lack of further
explication of the charge along with his unreasonable strategy  -
severely prejudiced petitioner. He not only plead to the charges
based on misunderstanding (no understanding), but he also was lea
-d to beleive (by counsel) that the colloquy was purely "procedur
-al" because counsel guaranteed him that he would win on appealii
-f he just conceded to the elements and the factual basis and fig
-ht the knowledge element on appeal.

**COUNSEL'S STRATEGY ON APPEAL**

   Counsel beleived that the government was required to prove that
he knew that his sex trafficking of minors affected interstate -
commerce. Section 1591 provides punishment for "whoever knowingly
...in or affecting interstate or foreign commerce...recruits, ent
~~-ices, harbors, transports, provides, obtains, or maintains by a~~
-ny person..knowing, or in reckless disregard of the fact,...that
the person has not attained the age of 18 years and will be cause
-d to engage in a commercial sex act.." 18 U.S.C. 1591(a)(1).

   Petitioner asserts that in EVANS,this court concluded that the
term "knowingly" does not modify the interstate element of 18 U.S
-

5

.C. 1591(a)(1). EVANS, 476 F.3d at 1180 n.2. In doing, this Court noted that "the existence of the fact that confers federal jurisd -iction need not be one in the mind of the actor at the time he - perpetrates the act made criminal by the federal statute." Id. (- quoting U.S. v. FEOLA, 420 U.S. 671, 677 n. 9, 95 S.Ct. 1255, 126 -0 n. 9 (1975)). Thus, under EVANS, THE Government was not requi- red to prove beyond a reasonable doubt that Robinson knew that hi -s actions affected interstate commerce, and accordingly, contrar -y to Robinson's position on appeal, that was not an element of t -he crime that needed to be explained to him in order for his - guilty plea to have been made knowingly.

Petitioner asserts that counsel attempted to re-hash the same argument EVANS put forth, citing an identity theft case (Flores-Figueroa) as bularks. Petitioner asserts that the fact that EVANS already determined the argument counsel submitted for appeal was "moot" further illustrates counsel's deficiency.

## CONCLUSION

Here the district court plainly erred in failing to ask if the defendant understood the nature and elements of U.S.C. 1591. The charge is very complex and it is unreasonable that counsel choose to forgoe explaining the nature of the charge and instead choose to argue "knowledge", an argument that was already rebutted in EV _ANS. The petitioner did not understand that what he was admittin -g constituted the crime charged.

In JOHNSON V. URIBE, 700 F.3d 413 (CA ( 2013)- the court held that the appropriate remedy for IAC during the plea process was v -acatur of the guilty plea.

In JOHNSON like this instant case counsel failed to "perform - adequate investigation into the facts of JOHNSON'S case or senten -ce before Johnson pleaded guilty," which was compounded "by his evident misunderstanding of the law..."

An adequate Sixth Amendment remedy "must neutralize the taint o -f a constitutional violation, while at the same time not grant a windfall to the defendant or needlessly squander the considerable resources the State properly invested in the criminal prosecution -." LAFLER, 132 S.Ct. at 1388. The court's remedy "should put the defendant back in the position he would have been in if the Sixth Amendment violation never occurred, " but without unnecessarily infringing on competing interests.

Counsel not only failed to dispose himself with case law surroun -ding the facts of the case (SEE KIMMELMAN V. MORRISON), he also guaranteed the petitioner that he would win the case on appeal. In U.S. V. HABEEB MALIK, 2012 U.S. Dist. Lexis 66507 (3rd Cir), t -he court explained that "this exact type of consistent, concerte -d , coercive campaign which might constitute deficient represent -ation."

In STRICKLAND V. WASHINGTON,466 U.S. at 690 the court determined - IF THE RECORD DOES NOT "CONCLUSIVELY" DEMONSTRATE "STRATEGIC RE -ASONS" FOR COUNSEL'S FAILURES, THE DISTRICT ENTERTAINING A MOTIO -N  UNDER 28 U.S.C. 2255 MUST HOLD AN EVIDENTIARY HEARING.

A SUBSEQUENT AFFIDAVIT FROM COUNSEL WILL NOT SUFFICE TO ESTABLISH A TRIAL STRATEGY, NOR ABSOLVE THE DISTRICT COURT FROM THE REQUIRE -MENT OF HOLDING AN EVIDENTIARY HEARING.

    In this case, Mr. Robinson has made specific, sworn, factual a -llegations which the district court should have accepted as true for the purpose of considering whether to hold an evidentiary hea -ring , because they are not conclusively disproved by the files and records of this case.

    In closing petitioner avers that it had not been for counsel's deficient performance at plea bargaining, he would have proceeded to trial (if he understood nature of charges against him). Petitioner seeks this court to vacate his sentence in order to ne -utralize the taint of his Sixth Amendment violation, at the mini -muman evidentiary hearing is required under STRICKLAND.

Counsel informed me that he did this purposefully and actually for lack of better words, had "duped" the government. Counsel ass -ured me that this was a foolproof plan. He guaranteed victory on appeal because of the lack of "knowledge" (SEE DIRECT APPEAL)  -
.

I asked counsel about the nature of the charge as a whole, exp -ressing to him that I never used a phone or hotel out of state during the conspiracy. Counsel did not expound on my inquiry, he stated " DON'T WORRY ABOUT WHAT ALL THEY HAVE TO PROVE BECAUSE WE KNOW WHAT THEY DIDN'T PROVE AND THAT'S KNOWLEDGE, IF WE START POK _ING AROUND THEY MIGHT REALIZE THEY MADE A MISTAKE." Due to this advice I ended my inquiry concerning the nature of my charge and if my stipulated facts even met the elements of the crime.

**On**  direct counsel did indeed do what he promised, however the district court denied his claim and my sentence was affiremed.

I would not have accepted the plea and would have proceeded to trial had counsel not guaranteed me victory on direct appeal.

GROUND 3

COUNSEL IS INEFFECTIVE IN FAILING TO CHALLENGE PETITIONER'S SENTE
-NCE ENHANCEMENTS AND HIS CRIMINAL HISTORY. PETITIONER WAS DOUBLE
COUNTED CONCERNING HIS SENTENCE ENHANCEMENTS; SOME ENHANCEMENTS
WERE APPLIED IMPROPERLY ALTOGETHER. CONCERNING PETITIONER'S CRIMI
-NAL HISTORY PURSUANT TO 4A1.2(f) PETITIONER IS ONLY TO RECEIVE
ONE POINT TO HIS PRIORS IN WHICH HE PLEAD NOLO. COUNSEL DID NOT
INVESTIGATE ANY OF THE AFOREMENTIONED FACETS. PETITIONER'S SENTEN
-CE WAS INCREASED SUBSTANTIVELY DUE TO COUNSEL'S LACK OF INVESTIG
-ATION. COUNSEL'S DEFICIENCY VIOLATED PETITIONER'S 4th AND 6th  -
AMENDMENTS.

The longstanding test for determining the validity of a guilty

pleas is "whether the plea represents a voluntary and intelligent

choice among the alternative courses of action open to the defend

-ant." NORTH V. ALFORD, 400 U.S. 25, 31. 91 S.Ct. 160, 164, 27 L.

Ed 2d 162 (1970).

To demonstrate ineffectiveness of counsel in the plea bargainin

-g arena, petitioner must establish that his counsel's performanc

-e : (1) fell below an objective standard of reasonable competenc

-e and  (2) that he was prejudiced by his counsel's deficient per

-formance. (...) To succeed in showing prejudice, the habeas peti

-tioner must show that it was in fact reasonably probable that bu

-t for the misadvice of his trial counsel he would not have plead

-ed guilty and would have insisted on going to trial.


ARGUMENT

PETITIONER  ASSERTS THAT HIS SENTENCING ENHANCEMENTS WERE IMPROP

-ER; HE WAS "DOUBLE COUNTED" IN SOME ENHANCEMENTS, IN OTHERS HE

~~DID NOT QUALIFY THE ENHANCEMENTS AT ALL. CONCERNING PETITIONER'S~~

CRIMINAL HISTORY, HIS SCORE WAS MISCALCULATED SEE 4A1.1(c).

Petitioner's contention here is two pronged. Petitioner in serati

-um offers bulwarks for his contentions.

CRIMINAL HISTORY-

* FELONY BATTERY, 06-5125, CORAL SPRINGS, 2 POINTS

* BATTERY DETENTION/STAFF, 07-8444, GLADES COUNTY, 2 POINTS

* AGG ASSAULT W/F , 09-18288Cf10A, VAUDEVILL, 3 POINTS

* POSS MARIJUAN, 10-1145510A, 1 POINT

* CARRY CONCEALED FIREARM, RESIST W/O VIOLENCE, LOITERING PROWLIN

-G, 11-8923Cf 10 A, Ft. Lauderdale, 2 POINTS.

### PRIOR SENTENCE

The Sentencing Guidelines define "prior sentence" as follows:
The term "prior sentence" means any sentence previously imposed
upon adjudication of guilt, whether by guilty plea, trial, or -
plea of nolo contendere, for conduct not part of the instant -
offense. U.S. Sentencing  Guidelines Manual 4A1.2(a)(1).

Section 4A1.2(a)(1) defines the term "prior sentence" as any
sentence previously imposed upon adjudication of guilt, whether
by guilty plea, trial, or plea of nolo contendere, for conduct-
not part of the instant offense. U.S. Sentencing Guidelines Manua
-1 4A1.2(a)(1). The controlling language is : "prior sentence"-
means any sentence previously imposed upon adjudication of guilt.
What follows this language are the means for reaching an "adjudic
-ation of guilt" ; whether by guilty plea, trial, or plea of nolo
contendere. U.S. Sentencing Guidelines Manual 4A1.2(a)(1).

2

A portion of section 4A1.2(f) provides that a diversionary dispos
-ition resulting from a finding or admission of guilt, or a plea
of nolo contendere, in a judicial proceeding is counted as a sent
-ence under 4A1.1(c) even if a conviction is not formally entered
-. Counting of the prior offense reflects a policy that defenants
who receive the benefit of a rehabilitative sentence and continue
to commit crimes should not be treated with further leniency. U.S
-. Sentencing Guidelines Manual 4A1.2(f) cmt.9.

Section 4A1.2(f) reads as follows: Diversion from the judicial pr
-ocess without a finding of guilt is not counted. A diversionary
disposition resulting from a finding or admission of guilt, or a
plea of nolo contendere, in a judicial proceeding is counted as a
sentence under 4A1.1(c) even if a conviction is not formally ente
-red, except that diversion from juvenille court is not counted.
U.S. Sentencing Guidelines Manual 4A1.2(f).

Section 4A1.1 (c) directs the district court, in calculating the
criminal  history category, to **add one point** "for each prior sent
-ence not included in (a) or (b).. .." Its application note direc
-ts the district court to section 4A1.2(a) for the definition of
"prior sentence" under section  4A1.1(c). U.S.S.G. 4A1.1 comments
n.3.

Under 4A1.1(c) a max of **four** points may be counted under this subsection.

Petitioner asserts that he was scored to a VI under Criminal H -istory because of 11 criminal history points. Petitioner assert -s that his Criminal History should be a III because of his nolo pleas, he is only eligible for four criminal history points.

SENTENCING ENHANCEMENTS-

Petitioner's sentencing enhancements read as follows:

BASE LEVEL 30 2G1.3(a)(2) -sex trafficking minors

INCREASE TWO 2G1.3(b)(2)(B)-unduly influenced a minor to engage in prohibited sexual conduct;

INCREASE TWO 2G1.3(b)(3)(B)-computer or interactive device/servic -e was used to entice, encourage, offer, or solicit a person to- engage in prohibited sexual conduct with a minor;

INCREASE TWO 2G1.3(b)(4)(A)- offense involves the commission of a sex act or sexual conduct;

INCREASE TWO U.S.S.G. 3B1.1(a)- was an organizer or leader of cri -minal activity that involved 5 or more participants.

INCREASE TWO USSG 3C1.1 obstructed or attempted to obstruct justi -ce.

REDUCED BY TWO-USSG 3E1.1(a)- accepted responsibility.

Petitioner's total offense level was a 43.

2G1.3(b)(2)(B)-

Petitioner first challenges his enhancement under Sentencing G
-uideline  2G1.3(b)(2)(B), which the district court applied on  -
grounds that Robinson had "unduly influenced" Z.G., T.C., AND L.J
-.  to engage in prohibited sexual conduct. Petitioner contends t
-hat  his conviction under 1591(b) already took this aspect of hi
-s conduct into account because this subsection includes, as an-
element , that the defendant used "force,...fraud, or coercion(.)
Petitioner avers that the aforementioned aspect(s) of his conduct
was already taken into account by the fact of his conviction; and
thus the district court's application of this enhancement was im-
proper because he was "double counted." "Double counting occurs w
-hen precisely the same aspect of the defendant's conduct factors
into his sentence in two seperate ways." UNITED STATES V. MOON. 5
-13 F.3d 527, 542 (6th Cir. 2008).


USSG 2G1.3(b)(3)(B)-

Petitioner contends that he was subject to this enhancement be
-cause he allegedly used a computer or interactive device tp enti
-ce, encourage, offer, or solicit a person to engage in prohibite
-d sexual conduct with a minor.  Petitioner points to Ex.B which
shows  that the Backpage ad was set up by a minor and the picture
-s posted to the backpage ad were from(L.J.'s) phone (allowed T.C
_. to use).

### USSG 2G1.3(b)(4)(A)-

The district court applied this enhancement because Robinson's offense "included the commission of a sex act." Petitioner here contends that his 1591(a) conviction already took this aspect of his conduct into account, because in his instant case the commiss -ion of a sex act was an element of his offense. As in the case of his enhancement under 2G1.3(b)(2)(B) petitioner avers that the enhancement was improper because he was "double counted."

### USSG 3A1.1(b)(1)-

The district court applied this enhancement because Robinson k -new or should have known his victims were vulnerable.

The vulnerable victim enhancement, applies when the defendant targets vulnerable victims. If, for example, a defendant sells f -raudulent securities, the fact that a purchaser happens to be - vulnerable (senile, for example) would not trigger the enhancemen -t. However, if the defendant specifically targets vulnerable vic -tims then the enhancement does apply. UNITED STATES V. ARGUEDAS, 86 F.3d 1054 (11th Cir. 1996). **IT IS THE PERPETRATOR'S PERCEPTION , NOT ACTUAL VULNERABILITY, WHICH TRIGGERS THE ENHANCEMENT.** UNITE -D STATES V. LONG, 935 F.2d 1207 (11th Cir. 1996). EXHIBITS B and B1 show that the petitioner did not beleive these- victims to be vulnerable. In regards to Z.G. her mother stated th -at she was prostituting before she met defendant.  Robinson had -reprimanded Z.G. for prostituting in the past. Z.G. also stated that being with "ACE" was one of the happy moments in her life. - Petitioner avers that the fact that she was prostituting prior to their alleged rendezvous shows that his perception of the vic- tim was not one that would be compartmentalized as "vulnerable".

Ex, (B) shows that MY was posting her own backpage ads. She was already disposed to and involved in the underworld of prostitutio -n. Her "renegade" tactics and displays of diligence and independ -ence do no denote to someone who is vulnerable; one would not perceive her in that fashion. The sentencing/district court did not cite reason for the victim vulnerability enhancement. Petitio -ner would like to once againg point out that his conviction alre -ady takes this aspect of his conduct into account.


USSG 3B1.1 (a),-

The district court applied a four level enhancement because Ro -inson was an alleged organizer or leader of criminal activity- that involved 5 or more participants.

Section 3B1.1(c) of the Sentencing Guidelines provides for an enhancement of the defendant's sentence if it is found that he wa -s a leader, manager, organizer, or supervisor of others in conne -ction with the offense. The government need prove the defendant' -s role only by a preponderance of the evidence. UNITED STATES V. YATES, 990 F.2d 1179 (11th Cir. 1993).

Petitioner avers that EX. F a fed. 3o2 form of an interview by "J.D." shows that Robinson was beleived not to be a leader over the conspiracy 1591(a), but a leader over the "Blood" street gang -. The Court in U.S. V. EDISON, 108 F.3d 1336, 1345 n.12 (11th Ci -r. 1997) determined that the sentencing court must focus on the **offense of conviction**, not other criminal conduct in which the defendant may have engaged.) ALSO SEE HOLLAND- a court should onl -y consider "conduct immediately concerning" the offense of convi -ction in determining an adjustment under 3B1.1(a). UNITED STATES V. HOLLAND, 22 F.3d 1040 (11th Cir. 1994).

7

Mr. Robinson contends that being an alleged "blood" leader is -
criminal conduct, not the offense of conviction. This was the -
only evidence produced in which the government could use to apply
the enhancement. Petitioner retorts, the government need prove th
-e defendant's role only by perponderance of the evidence.

## USSG 3E1.1(a) OBSTRUCTION OF JUSTICE

A defendant's offense level can be increased by two levels und
-er U.S.S.G. 3C1.1 if the defendant willfully obstructed, impeded
-, or  attempted to obstruct or impede, the administration of jus
-tice during the investigation , prosecution, or sentencing of-
the instant offense.

In this instant case the FBI jail calls made by an adult femal
-e, Jeana Dubois, who was in a relationship with ACE. On several
of the calls Dubois made to ACE, ACE talks about :licks:. On-
one call, the government alleged that petitioner can be heard mak
-ing a request to Ms. Dubois to make sure that M,Y. be unavailabl
-e for trial. When Dubois agreed and told him that she will find h
-er and beat her, ACE told Dubois that he meant M.Y. was to have
"no more oxygen".

Petitoner asserts that first and foremost that he **did not** proce
-ed to trial, therefore even if "no more oxygen" can be perceived
as a threat , petitioner asserts that this alleged threat was to
manifest contingent upon him proceeding to trial, which he did no
-t.

Examples of obstructive conduct include (1) directing another person to conceal material evidence and (2) threatening or unlawf -ully influencing a witness.

Petitioner avers that he never made an attempt nevertheless an overt action concerning "obstruction". Petitioner avers that the enhancement is improper.

Furthermore petitioner avers that what he states to Ms. Dubois is that the government is seeking to see that he himself has "no more oxygen"... Petitioner was facing 30-Life and no more oxygen was the sland he used, a metaphor for taking his life away, by vi -rtur of the time he was facing, hence i.e., no more oxygen.

Petitioner informed his counsel of this misinterpretation of - dialogue between Ms. Dubois and himself. Counsel stated that the enhancement was the least of his worries, and that he had "bigger fish to fry." Petitoner avers that his counsel was ineffective in failing to challenge all sentencing enhancements.

Petitioner avers that without the improper sentencing enhancem -ents his offense level will be a 33; paired with the corrected criminal history of category III his guidline range will be 168- 210 months. Petitioner seeks this court to sentence him to 168 months the low end of his new guideline range. At the minimum an evidentiary hearing is souught in light of STRICKLAND.

GROUND 5-

COUNSEL IS INEFFECTIVE IN FAILING TO CHALLENGE THAT THE STIPULATE
-D FACTS WERE INSUFFICIENT TO SATISFY THE JURISDICTIONAL INTERSTA
-TE-COMMERCE ELEMENTS OF THE OFFENSE(1591a).


18 U.S.C.S. 5191(a)(1) imposes punishment on anyone who knowin
-gly in or affecting interstate or foreign commerce, recruits, en
-tices, harbors, transports, provides, or obtains by any means a
person knowing that the person has not attained the age of 18 and
will be caused to engage in a commercial sex act.


Pursuant to authority conveyed by the Commerce Clause of the Un
-ited States Constitution, Congress has the  power to regulate ac
-tivities that substantially affect interstate commerce. The Unit
-ed States Supreme Court has interpreted that power broadly to -
include the power to regulate purely local activities that are -
part of an economic class of activities that have a substantial-
effect on interstate commerce. Where Congress has attempted to-
regulate or eliminate an interstate market, the RAICH decision-
grants Congress substantial leeway to regulate purely intrastate
activity, whether economic or not, that it deems to have the capa
-bility , in the aggregate, of frustrating the broader regulation
ofn interstate economic activity.

ARGUMENT

The district court determined that petitioner's conduct satisfied the "in or affecting interstate or foreign commerce" element of 1591(a), the government states: the undisputed facts of the PSI, Robinson admitted to prostituting Z.G. and M.Y. by using internet advertisements and cellular telephones to recruit clients. (DE:22 -0). The government cites U.S. V. EVANS, 476 F.3d 1176, 1179 (11t h Cir. 2007) to back their claim. Petitioner avers that U.S. V. _ EVANS as well as the Commerce Clause require more than mere intra -state /local activity that was affected in this case.

   Pursuant to authority conveyed by the Commerce Clause of the - United States Constitution, "Congress has the power to regulate - activities that substantially affect interstate commerce." SEE- GONZALES V. RAICH, 545 U.S. 1, 17, 125 S.Ct. 2195, 162 L.Ed. 2d 1 (20050. The Supreme Court has interpreted this power broadly to - include the "power to regulate purely local activities that are- part of an economic class of activities that have a substantial- effect on interstate commerce." "Where Congress has attempted to regulate (or eliminate) an interstate market, RAICH grants Congre ess substantial leeway to regulate purely **intrastate** activity(- whwther economic or not) that it deemsto have the capability, in the **aggregate,** of frustrating the broader regulation of interstat -e economic activity. USAV. MAXWELL, 446 F.3d 1210, 1215 (11th Ci -r.).

   In EVANS the Court found that "While Evan's activities may be minor in the national and international market of trafficking chi -ldren for commercial sex acts, his acts contribute to the market that Congress's comprehensive scheme seeks to stop. Evans **use of**

2

hotels that served interstate travelers and distribution of condo
-ms that traveled in interstate commerce are further evidence tha
-t Evan's conduct substantially affected interstate commerce.


   Petitioner avers that in this instant case there was no proof
and or stipulated fact that the hotels utilizied served interstat
-e travelers. Petitioner asserts that the aforementioned as an -
element that has to proven/stipulated to, here it was not. Furthe
-rmore petitioner asserts that the condoms manufactured out of st
-ate "cumulatively" or inthe aggregate affected interstate comme
-rce. There was no proof of the later in this instant case( out
of state manufactured condoms). Petitioner avers that hotel patro
-nage, without proving that hotels served interstate travelers is
not enough to violate the Commerce Clause.
   The government added in the fact that petitioner used a cellula
-r phone to recruit clients.
Petitioner avers that cellular telephones have been held to be in
-stumentalities of interstate commerce. SEE US. V. CLAYTON, 108
F.3d 1114, 1117 (9th Cir.) ans U.S. V. WEATHERS (6th Cir.). -
Petitioner avers that in  CLAYTON dealt with the cloning of cell
phones and the intrinsic machinery in them. WEATHERS is more apt
in this instant circumstance. In WEATHERS the court determined th
-at WEATHERS cell phone used locally/intrastate was covered in th
-e Commerce Clause.  However the district court found, it is clea
-r  from testimony about the manner in which Weather's cell phone
operated  that BELL SOUTH MOBILITY was required to engage in -

interstate activities by sending a search signal to communication
-s  equipment in another state to locate Weather's cellular telep
-hone. **Without that interstate search , the transmission of a tel**
**-ephone call to or from Weather's cellular telephone would not ha**
**-ve been possible.** Thus, even though the signal that actually con
-nected the two parties was ultimately intrastate, interstate act
-ivities were required to make that connection possible.

   Petitioner asserts that WEATHERS and this case are diametrical
-ly opposed concerning wether or not cell phones are covered unde
-r the Commerce Clause. Petitioner avers cell phones **have been he**
**-ld**  to be instrumentalities of interstate commerce due to circum
-stances analogous to WEATHERS, here this was not the case.

CONCLUSION

   WEATHERS as well as US V,WIILOUGHBY 742 F.3d 228 (6th Cir) are
examples of cases in which the Commerce Clause intended to cover.
In WILLOUGHBY the government's proofs included that WILLOUBY purc
-hased condoms and clothes and all of these items were manufactur
-ed out of state. The proofs also included that WILLOUGHBY used a
Chinese made cell phone in furtherance of his sex trafficking act
-ivities.  Petitioner asserts that Congress has specifically foun
-d that, in the aggregate, sex-trafficking activities "substantia
-lly affect interstate and foreign commerce." 22 U.S.C. 7101(b)(1
-12). Petitioner asserts that in this case the aggregate only equ
-ates to petitioner using a hotel room in hotels that were not ~
proven to serve interstate travelers and use of cell phone inters
-tate  that was not proven to be manufactured out of state nor ut
-ilized an out of state search signal. This purely local activity
is not what Congress meant to regulate.

4

Petitioner asserts that it is unreasonable that counsel would forgoe raising this argument. Counsel clearly was not disposed to case law surrounding the facts of the case (SEE KIMMELMAN V. MORR -ISON), counsel performed minimal investigation. Petitoner avers that pursuant to the mandates of STRICKLAND his performance was - clearly deficient. Due to counsel's deficient performance petitio -ner seeks thsi court to vacate his sentence, at the minimum an evidentiary hearing is required because petitioner has made claim -s that cnnot be disproved by the records and files of this case.

CERTIFICATE OF SERVICE

I hereby certify that a copy of the MEMORANDUM OF LAW IN SUPPO

-RT OF OF MOTION PURSUANT TO 28 U.S.C. 2255 was mailed via U.S.-

MAIL postage pre paid  to the following:

United States District court
Southern District of Florida
Office of the clerk. Room 8N09
400 North miami Avenue
Miami, florida 33128-7716

_Brandon Robinson_

Brandon Robinson

DATE: Feb, 26, 2016

# EXHIBITS

EX. A – Fed. 302 showing Z.G. was not vulnerable.

EX. B– Fed. 302 showing that minors set up their own backpage ad.

EX. C– Fed. 302  stating that Robinson was a "leader" of the Blood street gang, Robinson was not the leader of sex trafficking conspiracy.

EX. D– Affidavit of Brandon Robinson

Ex. A

FD-302 (Rev. 5-8-10)                    - 1 of 1 -



OFFICIAL RECORD

## FEDERAL BUREAU OF INVESTIGATION

Date of entry    10/28/2013

        Z▮▮▮▮▮ G▮▮ (minor, protect identity, hereinafter Z.G.), date of birth
(DOB) ▮▮▮▮▮▮▮▮, 1995, was interviewed at her school, Seagull School
Center at 425 SW 28th St Fort Lauderdale, Florida.  After being advised of
the identity of the interviewing Agent and Detectives Tim Shields and John
Loges and the nature of the interview, Z.G. provided the following
information:

        Z.G. was dating "ACE" (identified by law enforcement as BRANDON
ROBINSON) until July when they broke up. ROBINSON found out Z.G. was
prostituting and slapped her in the face. Z.G. has not seen ROBINSON since
then. Agent confronted Z.G. with the police report for August 8, 2013, when
Planation Police found her, ROBINSON, JOSE JONES, and S▮▮▮▮ F▮▮▮▮▮▮ in
Room #123 at the Plantation Inn. Officers found four baggies of marijuana
and a hand gun in the room. Z.G. admitted to being in the room but denied
that prostitution was occurring. F▮▮▮▮▮ paid for the room but does not
have a job and Z.G. could not explain how she had the funds to pay for the
room. When asked about the gun, Z.G. admitted she put it in her purse to
hide it, but it was not her gun. Z.G. did not want to say whose gun it was
but when Detectives said it was ROBINSON'S, she nodded her head yes.

        Z.G. explained that she did not want to "snitch" on anyone. Z.G. was
raised by her grandmother, who was abusive, until just a couple of years
ago. She described being happy only twice in her life; when she gave birth
to her son and when she dated ROBINSON. Z.G. admitted she and ROBINSON
stayed in hotels in August and September, 2013 and she prostituted.
Backpage post ID 23401823, which Z.G. previously identified as a
prostitution ad for her, had ROBINSON'S phone number which she used for
prostitution dates. Z.G. would give ROBINSON half of the money from her
prostitution dates.

Investigation on    10/23/2013    at   Fort Lauderdale, Florida, United States (In Person)

File #   31E-MM-3252068

Date drafted    10/25/2013

by   Elli Bray

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not
to be distributed outside your agency.

FD-302 (Rev. 5-8-10)

- 1 of 2 - 



**FEDERAL BUREAU OF INVESTIGATION**

Date of entry _____ 10/08/2013

CHILD VICTIM/WITNESS IDENTITY INFORMATION
Protect identity in compliance with 18 USC 3509.


    L█████ J████ (minor, protect identity, hereinafter L.J.), was
interviewed at the Fort Lauderdale Juvenile Detention Facility. After
being advised of the identity of the interviewing Agent and Fort Lauderdale
Detectives, and the nature of the interview, L.J. provided the following
information:

    J████ D█████ was incarcerated the beginning of August and at that time,
gave all of her belongings to her child's father, JERMAIN LAST NAME UNKNOWN
(LNU). JERMAIN gave the phone to L.J. and L.J. used three way for D████ to
talk to her children from jail. D████' phone had an application which
would allow jail calls. At one point L.J. had two phone, D█████ bearing
telephone number 754-246-9395 and L.J.'s phone, bearing number
561-572-8441. L.J. obtained phone number 561-572-8441 in June. At some
point, L.J. transferred her phone number, 561-572-8441 to D████ physical
phone.

    FBI Agent showed L.J. the Backpage ads that were subpoenaed. L.J.
explained Backpage ad, post ID 23346908, dated August 30, 2013, using
e-mail deonrender@gmail.com, was for TIANA (identified by law enforcement
as T███ C████, minor, protect identity, hereinafter T.C.) who L.J.
allowed to use her phone, 561-572-8441. Backpage ad, post ID 22475444,
dated August 30, 2013, using e-mail l█████j████12@yahoo.com, with phone
number 754-246-9395 was for L.J. Backpage ad, post ID 22466333 was also for
T.C. Backpage ad, post ID 22767899, using e-mail l█████j████12@yahoo.com
and phone number 561-572-████ was for a girl named M██ (law enforcement
identified as M██ Y████, minor protect identity, hereinafter M.Y.) who she
allowed to use her phone to post on Backpage. Backpage ad, post ID
23354350, using phone number 754-246-9395 and e-mail
l█████j████12@yahoo.com is an ad for L.J. Backpage ad, post ID 23550511,
e-mail l█████j████12@yahoo.com, phone number 954-297-3584 is an ad L.J.
thinks another person "Itty Bitty" used to post herself using one of L.J.'s
pictures. Backpage ad, Post ID 21125441, using phone number 954-822-4153,
e-mail l█████j████12@yahoo.com and pictures of L.J. L.J. claimed she did
not recognize the phone number


| | | |
|---|---|---|
| Investigation on | 09/26/2013 | at Fort Lauderdale, Florida, United States (In Person) |

File # 31E-MM-3252068

Date drafted 10/04/2013

by Elli Bray

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not
to be distributed outside your agency.

Ex. C

FD-302 (Rev. 5-8-10)                                -1 of 1-



**FEDERAL BUREAU OF INVESTIGATION**

Date of entry  10/24/2013

J█████ D█████, was interviewed at Fort Lauderdale Police Department.  After being advised of the identity of the interviewing Agents and the nature of the interview, D█████ provided the following information:

D█████ met EVERSON FLOWERS through T████ C█████R (minor, protect identity, hereinafter T.C.). FLOWERS booked T.C. and D█████ a hotel room at the La Quinta, room 319. FLOWERS posted T.C. on Backpage. D█████ denied that T.C. went on any prostitution dates, although potential clients called the phone FLOWERS provided. D█████ convinced T.C. not to go on any dates and instead to contact law enforcement. T.C. went back to her group home the next morning, and took the phone FLOWERS provided with her.

Prior to T.C. working for FLOWERS, T.C. was with a man named ANDRE HOLSTON also known as "SMURF". HOLSTON associated with JOSE JONES, BRANDON ROBINSON, "CJ", and "KELLOG" (identified by law enforcement as KERRY BULLOCK). L████████ J████ (minor, protect identity, hereinafter L.J.) worked for JONES and associated with ROBINSON, BULLOCK and HOLSTON. L.J. contacted ROBINSON from her detention facility and told him to get out of town because D█████ spoke with law enforcement.

D█████ suspected a minor named "PUFFY" (identified by the Agent as Z████████ G██████ (minor, protect identity, hereinafter Z.G.) worked for ROBINSON when D█████ was incarcerated. ROBINSON reportedly gave Z.G. a black eye. Once, when D█████ called her phone from jail, Z.G. answered the phone. D█████ left the phone with ROBINSON when she was incarcerated. An 18 year old female, named JASMINE BAISDEN, prostituted for ROBSINSON after Z.G. DUBOIS found the following phone numbers for ROBINSON in "BULLOCK'S phone, 954-584-7220 and 734-678-1062. BULLOCK and FLOWERS know each other some how. ROBINSON, JONES, and HOLSTON are Blood gang members. ROBINSON is over JONES and HOLSTON who were in training for the Blood gang. "DULY", "REAPER" and "AJ" were other Blood leaders names. There is a Blood party this weekend that D█████ was invited to attend.

D█████' previous phone number was 954-226-2476 and her current number is 954-560-9991. D█████' provided her e-mail address, slimmslady2@gmail.com but could not explain how it was found on a Backpage ad.

---

Investigation on  10/15/2013  at  Fort Lauderdale, Florida, United States (In Person)

File #  31E-MM~3252068                                          Date drafted  10/21/2013

by  Elli Bray, Susan Funk Romash

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

54

EX. D

### AFFIDAVIT OF THE PETITIONER, BRANDON ROBINSON

I, **BRANDON ROBINSON**, **swear** under the penalty of perjury, by th -e laws of the United States of America, that the following is tr -ue and signed this (2ɔ) day of February, 2016.


1.In the later part of 2013 (Jan.-Feb.), my counsel informed me that the government had made a plea offer in case No. 13-60284-CR -COHN. According to my counsel (Steven H. hagad), I would agree to- plea to Counts 1-3, and the offer would be a binding plea of 15 - years.

I decided that it would be in my best interest to proceed to trial. The day before my trial was to commence, my counsel inform -ed me that the plea offer was now 30 years for Cts. 1-3. Counsel informed petitioner that the plea went "up" because the Judge was disposed to a threatening phone call he made concerning a potenti -al witness (obstruction of hustice). Mr. Robinson's counsel info -rmed him that  if this call was admitted into evidence at trial , which he assured it would be, "he" (Mr. Robinson) would get a Life sentence.

I still wished to proceed to trial in light of the aforementio -ned. My counsel vehemently plead with me to accept the plea of 30 years. My "breaking point" was when counsel informed me that "ACE, THAT'S YOUR NICKNAME RIGHT, WELL GUESS WHAT, I'VE GOT AN ACE IN THE HOLE." I asked counsel exactly what he meant and he - informed me that the government did not prove, nor did you proffe -r (statement of facts) to "knowledge" concerning interstate nexu -s of 1591(a).

My Counsel stated that I would definately "walk" once the Appeals Court "sees this". For there reasons I yielded in my opinion (goi -ng to trial0, as to what was best, and took the erroneous advice of my counsel. I never fully understood the nature of the charges brought against me.


DATE: Feb. 24, 2016

I reaffirm that everything stated is true to the best of my knowl -edge.

Brandon Robinson

USP Coleman 1

P.O. Box 1033

Coleman, Fl. 33521



This envelope is made from post-consumer waste. Please recycle - again.

$ INSURANCE INCLUDED*

7015 1730 0002 3580 4093

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

CERTIFIED MAIL®

7015 1730 0002 3580 4093

UNITED STATES POSTAL SERVICE

1006

33128

U.S. POSTAGE PAID
COLEMAN, FL
33521
MAR 07 16
AMOUNT
$0.00
R2305H130354-09

FROM: Brandon Robinson #04577-104
Federal correctional complex usp [redacted]
P.o. box 1033
Coleman FL, 33521

TO: united states District court,
Southern District of Florida
office of the clerk room 8no9
400 North Miami, Avenue
Miami, Florida 33128-7716

USMS INSPECTED
BY

PS00001000014

EP14F July 2013
OD: 12.5 x 9.5

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

UNITED STATES POSTAL SERVICE.

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP14F © U.S. Postal Service; July 2013; All rights reserved.

# PRIORITY
# ★ MAIL ★

## FLAT RATE ENVELOPE
ONE RATE ★ ANY WEIGHT™



TRACKED★
INSURED★





RECEIVED

FEB 2 9 2016

P S 0 0 0 0 1 0 0 0 0 1 4

EP14F JULY 2013
OD: 12.5 x 9.5

★ Domestic only.   ™ For international shipments, the maximum weight is 4 lbs.



UNITED STATES
POSTAL SERVICE®